Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3389 | **DATE** | June 17, 2003 |
| **CASE TITLE** | Mfctrs. and Traders Trust Company v. Kenneth Ruff, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)    ☐ General Rule 21    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum and Minute Order, this Court GRANTS the Special Commissioner's fee motion in the amount of $675.00 and GRANTS Defendant Susan Ruff's motion for turnover in the amount of $14,723.00. The Court DENIES Defendant Leasecomm's motion for turnover. This case is closed; terminate document entries [23-1][24-1][27-1] and [41-1].

(11) ■ [For further detail see the attached memorandum and opinion order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 19 2003 date docketed | |
| X | Docketing to mail notices. | | | |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mds(lc) | courtroom deputy's initials | | date mailed notice | |
| | | | mailing deputy initials | |

| | |
|---|---|
| MANUFACTURERS AND TRADERS TRUST COMPANY, ONE M & T PLAZA, NY 14203-2399, TRUSTEE FOR SECURITIZATION SERIES 1994-2, AGREEMENT DATED 3-10-94, <br><br> Plaintiff, <br><br> v. <br><br> KENNETH RUFF, ET AL., <br><br> Defendant. | No. 01 C 3389 <br><br> HONORABLE DAVID H. COAR <br><br> **DOCKETED** <br> JUN 1 9 2003 |

## MEMORANDUM OPINION AND ORDER

This is a foreclosure action. On December 17, 2001, a judgment of foreclosure was entered in this case in favor of Plaintiff on its mortgage claim secured by Defendants Kenneth and Susan Ruff's marital residence in Naperville (the "Naperville Property"). On August 28, 2002, pursuant to the judgment of foreclosure, the Naperville Property was auctioned at a judicial sale. The Report of Sale and Distribution of the Property was approved, with a surplus of $30,796.00. On September 16, 2002, this Court granted the United States' motion for turnover of surplus funds in the amount of $15,398.00, which was for partial satisfaction of a federal tax lien incurred solely by Kenneth Ruff.

On October 10, 2002, Defendant USA Leasecomm moved for turnover of surplus funds in the amount of $5,142.27, which would satisfy the balance of its judgment owed by Kenneth Ruff. On October 31, 2002, Defendant Susan Ruff moved for turnover of surplus funds in the amount of $15,398.00, arguing that the remaining half of the surplus belongs solely to her, as the $15,398.00 turned over to the United States was Defendant Kenneth Ruff's share.

This Court first addresses the Special Commissioner's fee motion. Special Commissioner Howard Rubin performed additional duties beyond the sale and issuance of the Special Commissioner's Deed including: 1) appearing in court on September 17, 2002 regarding the IRS turnover petition; 2) responding to a Citation to Discover Assets to Third Party served on September 13, 2002 and dismissed in the Circuit Court of Cook County on September 19, 2002; and 3) appearing in court on October 10, and 29, 2002, November 19, 2002, and January 15, 2003 regarding status of turnover. Special Commissioner Rubin requests an additional $675.00 for these additional duties, which he calculated based on the time required under the standard fee rate, and the parties do not dispute this amount. Therefore, the Court GRANTS the Special Commissioner's fee motion in the amount of $675.00.

The crux of the dispute regarding the remaining surplus centers on the legal effect of the foreclosure sale and turnover of a portion of the surplus to the IRS. Defendant Leasecomm argues that, because the Ruffs held the Naperville Property as tenants by the entirety, each owner owns the whole real estate interest, and it therefore is entitled to receive the $5,142.27 that Kenneth Ruff owes it from the remaining surplus. In other words, Leasecomm contends that, after the IRS was paid half of the surplus on account of Kenneth Ruff's tax debt, he still retained an interest in the remaining half. Defendant Susan Ruff, on the other hand, argues that she solely is entitled to the remaining one-half of the surplus funds, as Kenneth Ruff's one-half share was turned over to the IRS. This Court agrees with Defendant Susan Ruff.

Under Illinois law, tenancy by the entirety is an estate in real property established by the Illinois Joint Tenancy Act, 765 ILCS 1005/0.01. A tenancy by the entirety estate may only be held by spouses and is limited to homestead property. Premier Property Mgmt., Inc. v. Chavez, 728 N.E.2d 476, 479 (Ill. 2000). The defining characteristic of a tenancy by the entirety estate is that

"any real property, or any beneficial interest in a land trust, held in tenancy by the entirety shall not be liable to be sold upon judgment . . . against only one of the tenants, except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payments of debts . . . ." 735 ILCS 5/12-112 (2003). Indeed, as the Supreme Court stated in United States v. Craft, "tenancies by the entirety cannot easily be severed unilaterally," and "[t]ypically, severance requires the consent of both spouses, or the ending of the marriage in divorce." 535 U.S. 274, 122 S.Ct. 1422 (2002).

In this case, there is no allegation that the Ruff Defendants created their tenancy by the entirety to avoid the payment of debts, nor is there any indication that the Ruffs intended to sever their tenancy. Although the Naperville Property has been sold, Defendant Leasecomm does not challenge the nature of the estate and/or its proceeds.[1] Rather, Defendant Leasecomm argues that, as an owner of a tenancy by the entirety, Defendant Kenneth Ruff is entitled to the whole, and therefore, Leasecomm should be allowed to receive a portion of the remaining surplus to satisfy Kenneth Ruff's debt. However, Defendant Leasecomm cites no legal support for this proposition, except for providing a legal definition of a tenancy by the entirety. In Craft, the Supreme Court held that, for the purpose of a federal tax lien, the respondent's husband possessed individual rights in the entireties so that such a federal tax lien could attach; however, it left open the issue of valuation. Craft, 122 S.Ct at 1425. Thus, significantly, the Court did not address the question of whether each tenant by the entirety possessed something other than 100% of the equity. Id.

There are two possibilities: the foreclosure sale destroyed the tenancy by the entirety, leaving the Ruffs as tenants-in-common, each with a half interest in the surplus; or the surplus was held in

---

[1] This Court notes that it is unclear whether the proceeds of the sale of a homestead property remain a tenancy by the entirety. While several states split on this issue, see Michael A. DiSabatino, Annotation, Proceeds or Derivatives of Real Property Held by Entirety as Themselves Held by Entirety, 22 A.L.R.4th 459 (1983), Illinois is silent. Because neither party contests the nature of the proceeds, however, this Court need not address this issue at this time.

-3-

the entirety for the Ruffs. If the former is true, then Leasecomm loses because the IRS seized Kenneth Ruff's half. If the latter possibility pertains, then Leasecomm still loses because, while Craft carved out an exception to the rule that individual creditors may not reach property held by the entirety for the IRS, no such exception applies to the claims of other creditors. The rationale in Craft rests entirely on issues concerning federal taxation, and the Supreme Court gave no indication that its reasoning should extend beyond federal tax law.[2] Here, the Illinois Joint Tenancy Act is clear that property held in tenancy by the entirety is exempt from being used to satisfy the debt of only one of the tenants. See In re Mukhi, 246 B.R. 859, 864 (Bankr. N.D. Ill. 2000) ("Thus, the language of the Illinois statute providing that property held in tenancy by the entirety 'shall not be liable to be sold upon judgment' must mean that such property is exempt from being used to satisfy the debt of one of the tenants."); In re Mallard, 196 B.R. 402, 410 (Bankr. N.D. Ill. 1996) ("Under Illinois case law, where the right of sale cannot be asserted, the existence of the lien must be denied."). Thus, as Defendant Leasecomm has provided no legal basis as to why it is entitled to attach a lien onto the tenancy by the entirety, and the Illinois statute clearly forbids it, this Court DENIES its motion for turnover in the amount of $5,142.27.

As to Susan Ruff, the Court holds that she is entitled to the remaining half of the surplus. As this Court previously discussed, if the foreclosure sale severed the Ruff's tenancy by the entirety, then Susan Ruff is entitled to half of the surplus as a tenant in common. If the tenancy by the entirety was not severed, as co-owner of the entirety, Susan Ruff is still entitled to at least half of the surplus.

---

[2] Notably in this case, half of the surplus already has gone toward satisfaction of Defendant Kenneth Ruff's federal tax lien, and the United States petitioned this Court for only half of the surplus because that was the amount it determined Kenneth Ruff was entitled to.

Therefore, the Court GRANTS Defendant Susan Ruff's motion for turnover in the amount of $14,723.00 ($15,398.00 minus the Special Commissioner's fee of $675.00).

Enter:

David H. Coar

United States District Judge

Dated: June 17, 2003